IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **RODNEY BROOKE GOODSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 7:13-cv-191-VEH |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

# **MEMORANDUM OPINION**[1]

The plaintiff, Rodney Brooke Goodson ("Mr. Goodson"), brings this action seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for Social Security Benefits. Mr. Goodson filed an application for Social Security Benefits on August 28, 2009. Thereafter, Mr. Goodson timely pursued and exhausted the

---

[1]On February 14, 2013, Carolyn W. Colvin was named the Acting Commissioner of the Social Security Administration on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on Mar. 20, 2014). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g). For the following reasons, the court will **REVERSE** and **REMAND** the Commissioner's decision.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for DIB and SSI as well as establish his entitlement for a period of disability, a claimant must be disabled as defined by the Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] 12 months." 20 C.F.R. § 416.905(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908.

The Regulations provide a five-step process for determining whether a claimant

---

[2] The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, as current through March 14, 2013.

2

is disabled. 20 C.F.R. § 416.920(a)(4)(i–v). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether the claimant has a severe impairment;

    (3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;

    (4)    whether the claimant can perform his past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

*See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2010); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, [he] will automatically be found disabled if [he] suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform [his] work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993), *overruled in part on other grounds*, *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); *accord Foote v. Chater*, 67 F.3d at 1559. The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

In the instant case, the ALJ, Jerome Munford, determined that Mr. Goodson met the first two tests, but concluded he did not suffer from a listed impairment. The ALJ

found Mr. Goodson unable to perform his past relevant work. Once it is determined that a claimant cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." *Id.* Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical–Vocational Guidelines ("the grids"). *Id.* at 1558–59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. *Id.* at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." *Id.* Here, the ALJ did seek such testimony.

The vocational expert ("VE") testified that a person such as Mr. Goodson with a light work RFC and additional specific work restrictions delineated by the ALJ would be able to perform available jobs. The VE had the same opinion if the RFC limited Mr. Goodson to sedentary work. However, if Mr. Goodson suffered "moderate severe to severe pain," the VE testified that Mr. Goodson would not be able to work. Tr. 62-64. After according "no weight" to the opinion of Mr. Goodson's treating pain physician, Dr. Waits, the ALJ:

- stated that Mr. Goodson's subjective statements about his pain were not substantiated by objective medical evidence;

- accorded "significant weight" to the "findings" of Bruce Romeo, M.D., who performed a consultative examination of Mr. Goodson on

> November 23, 2010 (more than eleven months prior to the MRI that Dr. Waits relied upon and that the ALJ ignored); and
>
> •       found that Mr. Goodson' statements regarding his pain and limitations to be "not fully credible and that his impairments are not disabling."

Tr. at 17.

## STANDARD OF REVIEW[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *See Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d at 1239 (citations omitted). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions,

---

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

however, are reviewed *de novo*, "because no presumption of validity attaches to the [ALJ's] determination of the proper legal standards to be applied." *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *See Cornelius v. Sullivan*, 936 F. 2d 1143, 1145–46 (11th Cir. 1991).

### THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

"The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986); *accord Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight." *MacGregor*, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. *Id.*; *Elam*, 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. *See MacGregor*, 786 F.2d at 1054.

## ALJ FINDINGS

The ALJ made the following findings:

1. Mr. Goodson met the insured status requirements of the Social Security Act through December 31, 2011.

2. He had not engaged in substantial gainful activity from his alleged onset date of August 26, 2009, through his date last insured.

3. He had the following severe impairments: cervical radiculopathy, arthritis, and depression.

4. He did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. He had the residual functioning capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), but with some exceptions. Specifically, Mr. Goodson could only occasionally bend, stoop or crouch. He also could not push or pull with his upper or lower extremities; could not climb; could not work around unprotected heights; but could drive or work around vibrating machinery. He also needed to work in a temperature controlled environment.

6. He was unable to perform any past relevant work.

7. He was born on [redacted by court], 1970, and was 41 years old, which was defined as a younger individual.

8. He had at least a limited education and is able to communicate in English.

9. Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Mr. Goodson was "not disabled," whether or not he had transferable job skills.

10. Considering Mr. Goodson's age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that he could perform.

11. Mr. Goodson had not been under a disability, as defined in the Social Security Act, from August 28, 2009, the alleged onset date, through the date of the decision.

Tr. 12-19.

## THE ALJ FAILED TO SHOW GOOD CAUSE TO DISCREDIT THE OPINION OF DR. JOHN WAITS

Mr. Goodson makes two arguments on appeal. First, he contends that the ALJ failed to set forth good cause for rejecting the opinion of treating physician Dr. John Waits. Second, Mr. Goodson contends that the ALJ improperly applied the Eleventh Circuit's pain standard. Because the court finds Mr. Goodson's first argument is correct, and that remand is required on that basis, it does not reach Mr. Goodson's second argument.

On December 7, 2011, Dr. John Waits, a physician specializing in pain management and treating Mr. Goodson for his pain, opined by letter as follows:

> It is my opinion that Mr. Goodson suffers from a condition that has lasted well over 12 months and is expected to continue indefinitely.
>
> *MRI results from 11/21/2011 showed*
>
> *"Advanced disc degeneration t L5-S1 with asymmetrical annular disc bulging and central protrusions towards the left. Left neural foraminal and left greater than right lateral recess narrowing is present and there may be a L5--S1 impingement and a unilateral left L5 pars defect."*

> In my capacity as his primary care physician, he cannot "maintain full-time gainful activity" since his medical condition is significant and is not expected to substantially improve . . . and certainly not without healthcare from an employer. He should be able to qualify for disability insurance.

Tr. 364 (emphasis in original).

The ALJ accorded this opinion "no weight."[4] Tr. at 17. Ordinarily, the ALJ must afford substantial weight to the opinion of a treating physician "unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F. 3d 1436, 1440 (11th Cir. 1997) (citing *MacGregor*, 786 F.2d at 1053). "Good cause" exists when "the doctor's opinion [is] not bolstered by the evidence, or where the evidence support[s] a contrary finding." *Id.* (citing *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir.1987) and *Sharfarz v. Bowen*, 825 F.2d 278, 280–81 (11th Cir.1987)). Additionally, good cause exists when a doctor's opinion is "conclusory or inconsistent with her own medical records." *Id.* (citing *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532–33 (11th Cir.1991) and *Edwards v. Sullivan,* 937 F.2d 580, 583 (11th Cir.1991)).

The ALJ's articulated reasons for giving "no weight" to Dr. Waits's opinion were that there was "no evidence to support his opinion and [that] it is inconsistent

---

[4]In their brief, counsel for the Government initially noted that the ALJ gave Dr. Waits's opinion "no weight," doc. 11 at 13, but then substituted, with no explanation or acknowledgment, "little weight" for "no weight." Doc. 11 at 14 ("The ALJ properly gave Dr. Waits's statement little weight.") (emphasis added).

9

with the other objective medical evidence in this case." Tr. at 17. However, the first reason is directly contradicted by the record, and the second reason is insufficiently explained. Therefore, the ALJ has not shown "good cause" for according Dr. Waits's medical opinion (as opposed to any legal consequences flowing from that opinion) "no weight," and the failure to do so was reversible error. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) ("The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."). "Where the Secretary has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." *MacGregor*, 786 F.2d at 1053.

The ALJ initially noted that "Dr. Waits' opinion that the claimant cannot maintain full-time gainful activity and that he should he should [sic] be able to qualify for disability insurance, is an issue that is reserved to the Commissioner." Tr. at 17. Although the ALJ is correct that disability is an issue reserved to the Commissioner, that fact alone does not allow the ALJ to give "no weight" to a treating physician's opinion about a claimant's condition.

Certainly, a treating physician's opinion that a claimant is disabled is not entitled to controlling weight; however, it was error to fail to give it any weight on that basis. *See Williams v. Astrue*, No. CV406-19, 2008 WL 591288, at *3 (S.D. Ga.

Mar. 3, 2008). In *Williams*, the court held it was error for the ALJ to give "no weight to the opinions of these physicians that Plaintiff was totally and permanently disabled. The ALJ stated, 'Such statements *cannot be considered as evidence* because this decision is reserved to the Commissioner of Social Security.'" *Id.* (emphasis in original) (citations omitted). The district court correctly found error, as

> The ALJ's reason for rejecting the physicians' opinions is inconsistent with the Social Security Administration Regulations. Social Security Ruling 96-5p states:
>
>> [O]pinions from any medical source about issues reserved to the Commissioner *must never be ignored*, and [the] notice of the determination or decision must explain the consideration given to the treating source's opinion(s).
>>
>> ...
>>
>> Medical sources often offer opinions about whether an individual who has applied for Title II or Title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions.... Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. *Such opinions on these issues must not be disregarded*. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.
>
> *accord* 20 C.F.R. § 404.1527 (Physician opinions about matters reserved to the commissioner will receive no "special significance."). Therefore, although the ALJ is correct in finding that these opinions were entitled to neither controlling weight nor special significance, the ALJ erred when he stated that they could not be considered as evidence. On the

11

contrary, the ALJ was required to consider the evidentiary value of these opinions.

*Id.* (emphasis in original) (some internal citations omitted). Further, as the district court found in *Williams*, this "no weight" determination makes it impossible for this court to find that the ALJ applied the correct legal standard. *Id.*

The ALJ then stated the following "evidentiary-based" reasons for according "no weight" to Dr. Waits' opinions. However, the articulated reasons – to the extent they are set out with sufficient clarity[5] – are directly contradicted by the record.

> Dr. Waits' opinion that the claimant has a significant medical condition is not supported by his own examinations of the claimant which have been essentially normal. Dr. Waits' opinion appears to be based on the subjective complaints of pain made by the claimant. As there is no evidence to support his opinion and as it is inconsistent with the other objective medical evidence in this case, Dr. Waits' opinion has been given no weight.

Tr. at 17. Contrary to the ALJ's assertions, Dr. Waits's opinion specifically relies on the "MRI results from 11/21/2011," which, Dr. Waits states, showed

> *Advanced disc degeneration t L5-S1 with asymmetrical annular disc bulging and central protrusions towards the left. Left neural foraminal and left greater*

---

[5]To show "good cause" to reject the opinion of a treating physician, the ALJ must set out his reasons with sufficient specificity to allow a reviewing court to review those reasons. *Miller v. Barnhart*, 182 F. App'x 959, 964 (11th Cir. 2006) (unpublished) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)) ("If the ALJ does not give a treating physician's opinion controlling weight, '[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error.'"); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (requiring the agency to give good reasons for not giving weight to a treating physician's opinion).

>   *than right lateral recess narrowing is present and there may be a L5--S1 impingement and a unilateral left L5 pars defect.*

Tr. at 364 (emphasis in original). Thus, the ALJ improperly <u>ignored the MRI results</u> which Dr. Waits explicitly stated he relied on for his opinion and instead improperly <u>speculated</u> that "Dr. Waits' opinion appears to be based on the subjective complaints of pain made by the claimant." Tr. at 17.

That the ALJ ignored these critical MRI results is made clear in his next sentence, where he states, "As there is <u>no</u> evidence to support his [Dr. Waits's] opinion and it is inconsistent with the other objective medical evidence in this case, Dr. Waits' opinion has been given <u>no</u> weight." *Id.* (emphasis added).[6] This was also reversible error. *See Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) ("While the ALJ need not articulate his reasons for rejecting every piece of evidence, he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position."). This is particularly true where, as here, the record shows that acceptance of such evidence would lead to a finding of disability. *See Elbert v. Barnhart,* 335 F. Supp. 2d 892, 913–14 (E.D. Wis. 2004) (remanding where VE testified that, if

---

[6]Given that Dr. Waits's opinion was expressly in reliance on these MRI results, and that the MRI results were set out in the middle of Dr. Waits's short (one-half page), typed opinion, the court finds that the ALJ ignored, as opposed to overlooked, the objective medical evidence that supported Dr. Waits's opinion.

evidence ALJ rejected without adequate explanation were accepted, claimant would be disabled); *Windus v. Barnhart*, 345 F. Supp. 2d 928, 943 (E.D. Wis. 2004) (same).

Because the ALJ did not even <u>mention</u> the objective evidence that supported Dr. Waits's medical opinion, he necessarily failed to adequately explain his total rejection of that opinion. Therefore, the ALJ's decision must be reversed and the matter remanded for appropriate consideration of the opinion of Dr. Waits.[7]

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is due to be, and hereby is, **REVERSED** and **REMANDED** with instructions that the ALJ apply the proper legal standards.

**DONE** and **ORDERED** this the 31st day of March, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[7]Remand is the appropriate course. *See Freeman ex rel. T.L.J. v. Astrue*, No. 1:10-CV-997-TFM, 2011 WL 2551181 at *2 (M.D. Ala. June 27, 2011) (relying on the prior panel decision rule and explaining that, both before and after *MacGregor v. Bowen*, "[f]or cases wherein the primary dispute is that of failing to clearly articulate the reasons behind rejecting evidence presented to the ALJ, the Eleventh Circuit and the former Fifth Circuit remanded cases to the agency when there was a failure to provide an adequate credibility determination").